## McDANIEL et ux. v. SAMFORD et ux.
### No. 3243.

Court of Civil Appeals of Texas. Beaumont. May 12, 1938.

Rehearing Denied May 25, 1938.

Sanders & McLeroy, of Center, for appellants.

Davis, Avery & Wallace, of Center, for appellees.

COMBS, Justice.

Appellees, M. U. Samford and wife, purchased 59⅕ acres of land from appellants, S. A. McDaniel and wife, under the following sales agreement:

"The State of Texas }
"County of Shelby }

"This Agreement, entered into by and between S. A. McDaniel and wife, S. J. McDaniel, party of the first part and M. U. Samford and wife, Mollie Samford, party of the second part, whereby party of the first part agrees to sell and convey to party of the second part,. the following described property, to-wit:

"59⅕ acres of land, a part of the Joel White Survey, and being the same land that Sam Mathis sold to S. A. McDaniel.

"Party of the second part agrees to pay to party of the first, a total consideration of $650.00, payable in installments, the first installment for the sum of $50.00, due and payable on October 15, 1936, with interest at the rate of 8% from Sept. 25, 1935, and the sum of $50.00, each Oct. 15th, of each following year. Party of the second part also agrees to keep all taxes on said 59⅕ acres of land paid.

"It is agreed and understood that party of the first part reserves and excepts unto himself, his heirs and assigns, one-half of the mineral rights, in, upon and under said land.

"It is also agreed and understood that all lease money collected on said land, is to be paid to party of the first part, and to be applied to the credit of the party of the second part on said note.

"It is also agreed and understood that when party of the second part has paid in full for one half of said $650.00 note, then party of the first part shall make him a deed to said land, and party of the second part shall execute notes covering remainder of said $650.00 note.

"Witness our hands this the 25th day of September, A. D. 1935.

"S. A. McDaniel
"S. J. McDaniel
"M. U. Samford
"Mollie Samford"

Prior to October 15, 1936, the date the first payment was due, McDaniel and wife leased the land for oil, receiving a bonus

of $87.80, which under the sales agreement entitled Samford and wife to a credit of one-half that amount or $43.90 on their note. Samford testified that on October 13, 1936, he went to McDaniel's home for the purpose of paying him the balance of $10.43 due for interest and principal of the first installment; that he tendered payment to McDaniel and it was refused. McDaniel testified that Samford came to see him on the 13th, but did not tender any money. He stated that Samford did tender payment on October 28th; that being after the date the payment was due he declined to accept it.

McDaniel and wife brought this suit in trespass to try title, for title and possession of the land involved, on the theory that time was the essence of the purchase agreement; that Samford and wife did not make payment or tender payment of the first installment before October 13, 1936, and that for said reason all their rights under the contract had terminated. It was shown that Samford and wife lived on the land in controversy, that the land doubled in value between the time the purchase agreement was made and the date the first payment was due, the increase in value being due partly to improved business conditions in the country and partly to oil leasing activities in the vicinity. It was also shown that Samford appeared at the tax collector's office in Center, for the purpose of paying taxes on the land, but he found that McDaniel had already paid the taxes. The Samfords, by cross action, offered to pay the balance due McDaniel on the matured installment and to refund to him the amount of the taxes paid by McDaniel on the land, and tendered the money in court. They prayed for judgment for specific performance of the contract. The case was submitted to a jury and, in response to a special issue, the jury found that M. U. Samford tendered to S. A. McDaniel the sum of $10.43 on or before the 15th day of October, 1936. Upon the verdict the trial court entered judgment in favor of the Samfords, construing the agreement in question as an executory contract of sale, payable in annual installments, and decreed, without prejudice to existing liens in favor of McDaniel, that the McDaniels take nothing except the amounts due, etc.

## Opinion.

■ Appellants' first proposition complains of the error of the trial court in permitting the introduction in evidence of an unsigned receipt which defendant Samford testified he carried with him to the home of McDaniel for McDaniel to sign at the time of the alleged tender on October 13, 1936. The error was immaterial for, as we view the record, appellees were entitled to judgment irrespective of whether the tender of payment of the balance due on the first installment was made by Samford or not. The agreement did not by its terms make time the essence of the contract. It was a simple sales contract, with an agreement to pay the installments specified. There were no special circumstances which made time the essence of the agreement by implication. Such being the case, appellants were limited to their claim for the debt and were not entitled to recover the land. Appellees had paid the greater part of the installment in question. The land was ordinary farming land; appellees were in possession of it and the land had increased in value. Under the testimony of McDaniel himself, the tender of payment of the full amount due was made within a few days after maturity date. Under such circumstances it would be inequitable to permit appellants to rescind the contract and recover the land. They have an adequate legal remedy for the collection of their debt when and as it falls due, and it is only just that they be limited to that remedy.

■ The vendor's remedy by rescission is a harsh and stringent one, especially when the greater portion of the consideration has been paid, and it is sought to forfeit the payment and recover the land. In such a case it would be inequitable to permit rescission to be had, but the vendors should be compelled to seek redress by suit upon the balance due upon purchase money. Tom v. Wollhoefer, 61 Tex. 277, 281; Seaboard Bank & Trust Co. v. Amuny, Tex.Civ.App., 6 S.W.2d 186, affirmed, Tex. Com.App., 23 S.W.2d 287. As a general rule a vendor will not be permitted to exercise the right to rescind when the circumstances of the particular case render rescission inequitable, and as a rule the purchaser may defeat an action for rescission by paying or tendering the amount due, with interest, regardless of how long he may have been in default. 43 Tex.Jur. 378.

The right of the Samfords under the agreement in question was not a mere option to purchase on compliance with certain conditions precedent. On the contrary, the agreement bound the Samfords to an uncon-

ditional enforceable promise to pay the purchase price. And it just as effectively bound the McDaniels to an enforceable contract of sale. In other words the agreement was not a mere option to purchase but a sales contract.

We overrule appellants' contention that the trial court erred in entering judgment quieting appellees' title to seven-eighths of the one-half mineral interest. True, the agreement provided for the McDaniels to execute a conveyance when one-half the consideration had been paid, and the Samfords are not entitled to have the conveyance executed at this time since less than one-half of the consideration has been paid. But, as we view the court's judgment, it merely has the effect of establishing the rights of the Samfords as against the contention of the McDaniels that their rights have terminated. The judgment fully preserves the indebtedness and lien against the property. It does not decree the making of the deed before the Samfords have complied with the requirements of the contract as a condition precedent to the making of the deed.

Judgment of the trial court is affirmed.